IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Vanida Khautisen, as Personal Representative of the Estate of Khouanexay Bill Sivilay, | C/A No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** (Jury Trial Demanded) |
| BHG Holdings, LLC, and BHG XXXVIII, LLC, | |
| Defendants. | |

Plaintiff Vanida Khautisen, as Personal Representative of the Estate of Khouanexay Bill Sivilay, by and through undersigned counsel, brings this wrongful death and survival action against Defendants BHG Holdings, LLC, and BHG XXXVIII, LLC (collectively, "BHG"), a so-called drug treatment center that profits from dispensing methadone—a highly intoxicating, federally controlled substance used to treat opiate addition. Under the guise of drug treatment, and over the course of many months, BHG added methadone to an already dangerous list of illicit drugs routinely taken by heroin addict Trent Neal without making any effort to detox or ween him from those substances. To suit its own cost-cutting holiday schedule, BHG gave Mr. Neal extra narcotics to take at home, despite having actual knowledge that doing so would place others in grave peril.

On December 26, 2020, after obtaining yet more narcotics from BHG, Mr. Neal ran a red light and crashed into a car driven by Mr. Sivilay, killing him. Mr. Neal was so intoxicated on BHG's drugs that he could not even stand, and an investigating officer had to hold him up.

Plaintiff, Mr. Sivilay's wife and Personal Representative, would respectfully show unto the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Vanida Khautisen is a resident of Spartanburg County, South Carolina, and is personal representative of the Estate of Khouanexay Bill Sivilay, her late husband. The Estate is filed in the Spartanburg County Probate Court. Ms. Khautisen brings this action on behalf of the estate pursuant to South Carolina Code § 15-5-90, and on behalf of statutory beneficiaries pursuant to South Carolina Code §§ 15-51-10, *et seq.*

2. Defendant BHG Holdings, LLC is a foreign for-profit limited liability company organized under the laws of the State of Texas with its principal place of business in Dallas, Texas. BHG operates at least 66 methadone clinics in the United States, one of which is BHG Spartanburg Treatment Center, located in Spartanburg, South Carolina. Upon information and belief, no member of BHG Holdings, LLC, is a citizen of South Carolina.

3. Defendant BHG XXXVIII, LLC, is a limited liability company organized under the laws of the State of Delaware. Upon information and belief, no member of BHG XXXVIII, LLC, is a citizen of South Carolina.

4. Decedent Khouanexay Bill Sivilay was a resident of Spartanburg County, South Carolina. He is survived by his wife and two minor daughters.

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in the district.

## FACTS

7. Trent Neal is a "junkie"—a habitual user of heroin and other illegal drugs, including marijuana, amphetamines, benzodiazepines, cocaine, ecstasy, LSD, methamphetamine, fentanyl, morphine, and oxycodone. He began taking illegal drugs at age 14.

8. On June 2, 2020, Mr. Neal enrolled in methadone treatment at BHG's Spartanburg clinic in the hope of getting off heroin.

9. BHG's Spartanburg clinic is a methadone treatment center. BHG's Spartanburg clinic sells methadone to drug addicts for cash payments of approximately $83 per week.

10. Nationally, BHG makes nearly $100 million per year from selling narcotics to drug addicts.

11. Methadone is an opiate agonist, which prevents persons from getting high on other opiates like heroin.

12. Methadone itself is an addictive opiate, but unlike heroin it has a long half-life. Methadone treatment essentially is the substitution of one opioid with a long half-life for another short-acting opioid.

13. Methadone has adverse interactions with several other drugs.

14. Taking benzodiazepines with methadone is especially hazardous as methadone heightens the effects of the benzodiazepines.

15. Addiction to benzodiazepines is common among persons seeking methadone treatment, which is why BHG had Mr. Neal sign a special "Benzodiazepine Education" form when he enrolled at BHG.

16. South Carolina regulations regarding methadone treatment provide that "take home" doses may be provided for off-premises consumption only to patients who satisfy all the following criteria:

> a. Absence of misuse of opioids and non-opioids;
>
> b. Absence of alcohol misuse, or determination that the using alcohol and is in treatment for the alcohol misuse problem;
>
> c. Regularity of attendance at the Opioid Treatment Program, to include required counseling sessions;
>
> d. Absence of serious behavior problems, including loitering at the Opioid Treatment Program;
>
> e. Absence of known recent criminal activity;
>
> f. Employment, school attendance, or other appropriate activity; and
>
> g. Assurance that take-home Medication can be securely transported and stored by the Patient for his or her use only.

S.C. Dep't Health & Envtl. Control Reg. 61-93 § 1208(B)(6).

17. The regulation also requires that the "Opioid Treatment Program Physician shall document compliance by the Patient with all of the aforementioned requirements prior to providing the first take-home dose." *Id.* § 1208(C).

18. BHG is closed on Sundays and holidays.

19. Being open on those days would be expensive, and so BHG maximizes profits by closing on those days and providing take home narcotics to drug addicts regardless of whether the addict satisfies clinical or regulatory requirements for eligibility for take home doses.

20. At intake, Mr. Neal informed BHG he was a current user of fentanyl, marijuana, and benzodiazepines.

21. During Mr. Neal's so-called treatment, he was subjected to occasional urinalysis tests by BHG.

22.     The results of these urine tests indicated that Mr. Neal continued to use illicit drugs including benzodiazepines.

23.     Even though BHG and its employees were aware of Mr. Neal's continued drug abuse, BHG continued to titrate-up his methadone consumption to the highest possible daily dose.

24.     BHG also continued to provide extra narcotics to Mr. Neal to take home to consume on Sundays and holidays outside the presence of BHG staff.

25.     BHG never made any effort to "detox" Mr. Neal or ween him from his use of the addictive substances for which he initially sought treatment.

26.     On December 24, 2020, Mr. Neal took methadone at BHG's Spartanburg clinic and received a take-home supply of methadone for Christmas, when the clinic would be closed.

27.     Later that day, Mr. Neal purchased illegal benzodiazepines.

28.     On December 26, 2020, at 9:28 a.m., Mr. Sivilay was on Springfield Road in Spartanburg waiting at a green light at the intersection of Springfield and US-176.

29.     When the light turned green, he slowly pulled into the intersection, reaching a speed of 12 mph before the collision.

30.     At the same time, Mr. Neal was speeding down US-176 at approximately 50 mph while under the influence of a potent cocktail of BHG-supplied methadone and illegal benzodiazepines. The speed limit on US-176 in that area is 35 mph.

31.     Mr. Neal ran the red light at the intersection with Springfield Road and collided head-on into the driver's side of Mr. Sivilay's vehicle at full speed.

32.     Mr. Sivilay died from injuries received from the collision.

33.     After the collision, Mr. Neal told the lead investigator, Trooper M.P. Carovillano, he was coming from BHG's Spartanburg clinic after taking his prescribed dosage of methadone.

34. At that time, the BHG clinic was open on Saturdays from 5 a.m. to 9 a.m.

35. Mr. Neal also told Trooper Carovillano he received a take home dose because BHG would be closed on the following day, a Sunday. He denied taking the second dose that morning, but officers were unable to locate it in his vehicle.

36. Trooper Carovillano noticed fresh track marks on Mr. Neal's right arm and asked Mr. Neal when he last took heroin. Mr. Neal stated he last took heroin on the preceding Saturday (i.e., December 19, 2020).

37. Mr. Neal also stated he regularly smoked marijuana on the weekends.

38. After failing a sobriety check, Mr. Neal was arrested for felony DUI resulting in death.

39. After his arrest, Mr. Neal consented to provide blood and urine samples.

40. While waiting for a phlebotomist, he changed his story and said he arrived at BHG at 9:01 a.m. but it closed at 9:00 a.m. and so he did not receive any methadone that day.

41. Mr. Neal's blood sample was analyzed by the South Carolina Law Enforcement Division and it tested positive for marijuana, methadone, Xanax, flubromazolam (a powerful benzodiazepine analogue), etizolam (another benzodiazepine analogue), and benzodiazepine metabolites.

**FIRST CAUSE OF ACTION**
(Wrongful Death - Negligence/Negligence per se/
Gross Negligence/Willful, Wanton, and Reckless Conduct)

42. Each of the foregoing paragraphs are incorporated herein.

43. BHG owed a duty of care third parties, including the Decedent, which arises from:

   a. The inherently dangerous dispensation of methadone to a known drug addict and continuing drug user, such as Mr. Neal;

   b. BHG's actual knowledge that Mr. Neal continued to use prescription

       and illicit drugs;

c.    BHG's unique knowledge of the specific risk posed by Mr. Neal and his continued prescription and illicit drug use coupled with methadone use, which was unavailable to the public at large or third parties like Mr. Sivilay such that he had no way to protect himself;

d.    BHG's decision to dispense methadone not as a substitute for another drug, but in addition to the already dangerous cocktail of substances Mr. Neal was routinely impaired by;

e.    An affirmative obligation to warn Mr. Neal of the dangers to himself and others posed by his methadone use and his use in conjunction with other drugs;

f.    An affirmative obligation to intervene to protect Mr. Neal and others after BHG's dispensation of methadone to Mr. Neal caused him to become intoxicated at an unreasonably dangerous level; and

g.    State and federal law imposing strict limits on the dispensation of methadone to drug addicts like Mr. Neal.

44.    BHG, through the acts and omissions of its agents, servants, and employees, breached its duty of care and was negligent, grossly negligent, and/or reckless in one or more of the following ways:

a.    Dispensing methadone to Mr. Neal;

b.    Dispensing an excessive, unsafe dose of methadone to Mr. Neal;

c.    Dispensing more than one dose of methadone to Mr. Neal to be consumed outside the presence of facility staff;

d.    Dispensing methadone to Mr. Neal while knowing he continued to use and illicit drugs;

e.    Failing to test or evaluate Mr. Neal's level of impairment prior to dispensing methadone to him;

f.    Failing to make any effort to detox Mr. Neal and/or titrate-down his methadone usage until he abstained from illicit drug use;

g.    Dispensing methadone to Mr. Neal knowing he had driven himself to the facility and would likely leave by driving his vehicle;

    h.    Failing to monitor Mr. Neal for adverse effects after consuming methadone;

    i.    Permitting Mr. Neal to leave the facility and drive a vehicle after consuming methadone and becoming impaired;

    j.    Failing to warn Mr. Neal his driving might be impaired as a result of his methadone consumption;

    k.    Failing to warn Mr. Neal of adverse drug interactions between methadone and the numerous other prescription and illicit drugs he was known to be using;

    l.    Dispensing methadone in contravention to laws and regulations designed to ensure the safety of patients and the public;

    m.    Failing to observe policies and procedure mandated by federal law, including the federal Controlled Substances Act, 21 U.S.C. §§ 821, *et seq.*, and the federal Opioid Treatment Standards, 42 C.F.R. §§ 8.11, *et seq.*;

    n.    Failing to observe policies and procedures mandated by state law, including South Carolina Code §§ 44-53-710 *et seq.* and South Carolina Code Regulations §§ 61-4.101 *et seq.*; and

    o.    In such other particulars as may be ascertained through discovery undertaken pursuant to the Federal Rules of Civil Procedure.

45.    BHG was grossly negligent in that it failed to exercise even slight care in its so-called treatment of Mr. Neal.

46.    BHG was reckless in that it knew or should have known that its failure to exercise care in the dispensation of methadone to known drug addicts crated unreasonably dangerous, but entirely preventable, conditions likely to cause serious harm to motorists like Mr. Sivilay.

47.    BHG's reckless behavior was motivated by money, including cash received from drug addicts in exchange for drugs and costs saved by providing take-home drugs to drug addicts instead of being open on Sundays and holidays.

8

48. The fatal injury and conscious pain and suffering suffered by Decedent was the direct, proximate result of BHG's negligent, grossly negligent, and reckless conduct.

49. Plaintiff, on behalf of Decedent's statutory beneficiaries, is entitled to recover all damages, present and prospective, suffered because of Decedent's wrongful death, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of Decedent's society.

50. Plaintiff also incurred burial expenses and other out-of-pocket expenses because of BHG's conduct.

51. By reason of the recklessness of BHG as set forth above, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
(Survival – Negligence/Negligence *per se*/
Gross Negligence/Willful, Wanton, and Reckless Conduct)

52. Each of the foregoing paragraphs are incorporated herein.

53. Between the time the collision occurred and the time of his death, Decedent suffered extreme conscious pain and suffering, mental anguish, distress, and shock because of the collision.

54. Plaintiff, as Personal Representative of Decedent's estate, is entitled to judgment against BHG in an amount sufficient to compensate the estate for damages suffered during Decedent's survival.

55. Plaintiff is also entitled to an award of punitive damages.

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all claims so triable.

## PRAYER

WHEREFORE, Plaintiff prays for judgment in this matter in a sum sufficient to adequately compensate the estate and the statutory beneficiaries for damages suffered, for punitive damages sufficient to impress upon the Defendant the seriousness of its conduct, for attorneys' fees and costs incurred in this action, and for all such further relief as the Court deems just and proper.

        Respectfully submitted,

        s/Richard A. Harpootlian
        Richard A. Harpootlian (Fed. ID No. 1730)
        Christopher P. Kenney (Fed. ID No. 11314)
        Phillip D. Barber (Fed. ID No.12816)
        RICHARD A. HARPOOTLIAN P.A.
        1410 Laurel Street (29201)
        Post Office Box 1090
        Columbia, South Carolina 29202
        Phone (803) 252-4848
        Facsimile (803) 252-4810
        rah@harpootlianlaw.com
        cpk@harpootlianlaw.com
        pdb@harpootlianlaw.com

        Matthew E. Yelverton (Fed. ID No. 7966)
        YELVERTON LAW FIRM, LLC
        60 Folly Road
        Charleston, South Carolina 29407
        (843) 574-8822
        Facsimile (843) 574-8824
        myelverton@ylitigators.com

        ATTORNEYS FOR PLAINTIFF
        VANIDA KHAUTISEN, AS PERSONAL
        REPRESENTATIVE OF THE ESTATE OF
        KHOUANEXAY BILL SIVILAY

November 18, 2021
Columbia, South Carolina.