IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Vanida Khautisen, as Personal Representative of the Estate of Khouanexay Bill Sivilay, <br><br> Plaintiff, <br><br> v. <br><br> BHG Holdings, LLC, and BHG XXXVIII, LLC, <br><br> Defendants. | C/A No. 7:21-cv-3775-TMC <br><br><br> **PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL** |

Plaintiff Vanida Khautisen, as Personal Representative of the Estate of Khouanexay Bill Sivilay, through undersigned counsel, hereby replies in support of her motion pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure to compel Defendants BHG Holdings, LLC, and BHG XXXVIII, LLC (collectively, "BHG"), to answer Plaintiff's Interrogatories 22, 24, and 25, and to produce all non-privileged documents responsive to Plaintiff's Requests for Production 35, 36, 37 and 38.

**A.    Interrogatories 22 and 25, and Request for Production 39**

These interrogatories ask for revenue generated from drug-dispensing treatment programs and cost of counseling services provided at the Spartanburg clinic in 2020. Plaintiff asserts this information is relevant for the reasons set forth in her theory of the case section of her motion. BHG treats counseling as a cost to minimize to increase profits, and Mr. Neal received services below the standard of care and below regulatory requirements as a result.

BHG objects that the information is not relevant. But, as Plaintiff sets forth in her motion to compel, inadequate counseling is the crux of this case, and the number of patients served, the revenues obtained from those patients, and the expenditures on counseling services for them—at

1

the clinic Mr. Neal was treated during the year of his treatment—is relevant to BHG's failure to provide adequate counseling services to Mr. Neal. It is relevant particularly to why he received such inadequate substance abuse counselling—whether it was a consequence of how BHG operated that clinic in that year (as Plaintiff argues), or was something specific to Trent Neal, like a lack of cooperation with treatment (as BHG will argue). And it is also relevant to the factual defenses Plaintiff's expert witnesses have asserted regarding the impact of the Covid-19 pandemic on BHG's ability to meet the standard of care. For example, Defendants' expert testified that the clinic was struggling to keep its doors open that year because of impact of Covid-19 restrictions. Edward Johnson Dep. Tr. 11:7–14 ("My direct feeling is or my main feeling is that I think you need to put it in context. I think it needs to be put in the context of the time that this happened, which was November of 2020, which was smack dab in the middle of COVID, which was very much when clinics were doing their best to try and stay open . . . .").

In response to the motion to compel, BHG presents two principal arguments. First, BHG argues the requests are premature because a prima facie case for punitive damages cannot be made before summary judgment motion is decided. But none of the requests subject to the present motion to compel are made to discovering information relevant to punitive damages. Plaintiff requested company-wide financial statements in her initial discovery requests (Request No. 30 in the first set of requests for production served March 3, 2022) but, after BHG objected, agreed to defer those requests until after a summary judgment.

The present requests are not requests for financial statements for punitive damages purposes. They are requests for data regarding the operations of only one of 117 methadone clinics—the one clinic Trent Neal attended—in a single year—the year he attended. Even after the Court rules on the pending summary judgment motion, this information would not be relevant

2

to punitive damages because the performance of one clinic of 117, three years ago, says little about BHG's financial position or ability to pay punitive damages. *Cf. Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) (noting "a defendant's financial position is a proper consideration in assessing punitive damages"). BHG's discussion of the discoverability of financial information to support a demand for punitive damages therefore has no relevance to the present motion.

BHG's second argument is that it would be "wholly unjust" to look at a facility's monthly operating budgets to learn about its operations. Resp. Opp'n Mot. Compel 10. That argument is manifestly without merit. BHG complains that Plaintiff "fails to recognize" costs in distributing methadone other than the purchasing the methadone. *Id.* at 9. BHG also complains that "Plaintiff has merely gathered the costs of treatment and the salaries/hourly wages of the ground-level individuals at BHG Spartanburg, then seemingly concluded that the individuals at the top are inflating prices." *Id.* at 9. Plaintiff does not "fail to recognize" these costs—Plaintiff has moved to compel disclosure of these costs. Plaintiff ***wants*** to know the costs BHG describes in (a) through (f) on page nine of its response. BHG, however, refuses to disclose them, presumably because disclosure would not advance its position in this litigation. It seems unlikely BHG is fighting disclosure of information that would win the case for BHG. This point is well demonstrated in the deposition of the clinic director, quoted at length in Plaintiff's motion to compel, in which he refused to "remember" whether at a profit or a loss, and, when cornered into admitting it was operating at a profit, would not "remember" the profit amount within three orders of magnitude despite reviewing the number with his supervisor on a monthly basis.

Regardless, Plaintiff set forth her "theory of the case" in her motion to compel, and to refute that theory BHG has made factual representations to the Court—listing costs Plaintiff "fails to recognize" and representing that they are material to this case. BHG invites the Court to speculate

3

that the reasonable inferences from the information Plaintiff does have must be wrong because of some information in BHG's possession. Plaintiff is entitled to discover the evidence supporting that defense before trial. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").

The one case BHG cites in support of its position is inapposite. In *McCollum v. GEICO*, a plaintiff sought to compel financial information from an insurance company to support a claim for punitive damages. No. 5:20CV46, 2020 WL 6947904, at*4 (N.D.W. Va. Aug. 24, 2020). The court found that to be premature. As noted above, that is not an issue in the motion *sub judice*. The McCollum plaintiff had a fallback argument that financial information would support finding a "generalized" business practice of denying insurance claims in bad faith. The court found that argument did not overcome the need to make a prima facie case for punitive damages because the connection between an insurance company's overall financial performance and a policy of denying claims in bad faith was too attenuated: "It is possible that such evidence could bolster an already established claim, but, alone, such evidence would not establish a generalized business practice. For example, an insurance company could be in the practice of routinely denying renters' insurance claims in bad faith, but still post losses of revenue for certain periods of time." *Id.*

Here, Plaintiff seeks operational information specific to only one of BHG's 117 clinics, and only for a single year (2020). This would, for example, allow Plaintiff to look at revenue from patients and payroll for counselors to see if the staffing level of counselors and their qualifications met regulatory requirements—a question BHG has yet to answer definitively. The Court should grant the motion to compel as to interrogatories 22 and 25 and request for production 39.

**B.     Interrogatory 24 and Requests for Production 40 and 41**

This Interrogatory asks for the number of counseling sessions provided in 2020 at the Spartanburg clinic and the length of those sessions, identifying sessions as being in-person or by

4

remote means.  BHG objects that this information would be "completely out of context and irrelevant to establishing whether standards of care were met."  Resp. Opp'n Mot. Compel 10.  That is not true.  There are regulations regarding counseling frequency.  For example, the Individual Plan of Care must be reviewed with a patient and his counselor at least every 90 days in his first year of treatment.  S.C. Dep't Health & Environ. Ctrl. Reg. 61-93 ¶ 707.  BHG's own policies require counseling within 10 days of a positive drug screening.

This information is critically important because, again, BHG will defend itself with favorable speculation in place of the evidence it refuses to produce.  BHG will argue Mr. Neal only had one counseling session in seven months because of some idiosyncratic issue with Mr. Neal— he was hard to contact, or he refused to come in, etc.  But if most or all BHG Spartanburg's 700 patients were receiving counseling with the same one-session-per-seven-month frequency, that argument falls flat and BHG knows it.  That is why BHG is refusing to produce the requested information—producing evidence makes it harder for BHG to defend itself with speculation.

Finally, BHG's response appears to abandon its objection that producing this information would require a manual review of patient charts, and to concede that the information is stored in an electronic database that may be readily queried.

The Court therefore should order BHG to answer Interrogatory 24 or, alternatively, to produce responsive documents for Requests for Production 40 and 41.

C.    **Request for Production 35**

This Request for Production asks for copies of personnel files for certain employees—the counselors, the program director (who supervises the counselors), and case managers (who may engage in services like counseling)—who were employed at the Spartanburg clinic from June 1, 2020, to December 31, 2020.  As stated in Plaintiff's motion to compel, the purpose of this request is to determine whether the number and qualifications of the persons employed at the BHG

5

Spartanburg clinic during Trent Neal's treatment satisfy South Carolina regulatory requirements—a question no BHG representative has been willing to answer in a deposition.

In response, BHG has produced personnel files for only two employees, two counselors who were at times assigned to provide counseling services to Trent Neal, and, in its response to the motion to compel, states it will produce files for the program director and for a nurse whose file was not requested by Plaintiff. In its response to the motion to compel, BHG also for the first time objects that the requested information is not relevant. As stated in the motion and as stated to BHG's counsel in consultations, the purpose of the request is to determine whether the number and qualifications of the counselors met regulatory requirements during Trent Neal's tenure at BHG. BHG's witnesses, including the Rule 30(b)(6) designee for this very topic, refused to answer this question. Samson Teklemariam Dep. Tr. 11:1–3 ("Q. Do you know how many counselors, ballpark? A. No. Again, that's more in the HR records. I mean, if I -- I could have looked that up."). Plaintiff asked for the personnel files to do the math for herself. BHG never objected until its response to the motion to compel, when the request became suddenly "not relevant." Plaintiff notes that the annual report for the Spartanburg clinic that BHG did produce after this motion to compel was filed states that there are 10 counselors for 650 patients, a 1:65 ratio well beyond the absolute minimum requirement of 1:50. But that report is merely a year-end snapshot. Plaintiff needs the start and end date information in the personnel files to determine what the staffing level actually was during the year (for example, Plaintiff knows one of those counselors, McKinley Anderson, was only hired in October 2020). Plaintiff also needs it to compare the qualifications of the counselors to regulatory requirements.

Request for production 36 asks for the internal audit reports regarding the Spartanburg clinic in 2020. The reports document clinic compliance with applicable regulations. BHG did not

object to this request but refused to produce the documents. After Plaintiff filed her motion to compel, BHG provided what appear to be the requested documents but only for the fourth quarter of 2020, and in its motion response BHG states "[t]o the extent Plaintiff believes other documents should be produced" production would be "entirely disproportionate to the needs of this case and irrelevant." Resp. Opp'n Mot. Compel 6. There is no legal basis for BHG to cherry-pick three months from 2020 and then unilaterally declare documents regarding the rest of the year irrelevant. BHG presents no argument as to why October 2020 compliance documentation would be relevant but not, for example, September 2020, and has yet to make anything more than an empty, boilerplate objection to this request. The time to do so is now past.

The Court should order BHG to produce documents responsive to Request for Production 35 and 36. Plaintiff is satisfied with the annual report produced in response to request for production 37 and does not believe action by the Court is necessary regarding that request.

**D.    Request for Production 38**

This Request asks for materials used in training counselors at the Spartanburg clinic in 2020. Plaintiff is satisfied with the documents produced in response to this request after the motion to compel was filed and does not believe action by the Court is necessary regarding that request.

*    *    *

For the foregoing reasons, the Court should grant her motion to compel and order Defendants to answer Plaintiff's Interrogatories 22, 24, and 25, and to produce documents responsive to Plaintiff's Requests for Production 35, 36, 39 and, if Defendants are unable to answer Interrogatory 24, Plaintiff's Requests for Production 40 and 41.

                    Respectfully submitted,

                    s/Phillip D. Barber
                    Richard A. Harpootlian (Fed. ID No. 1730)
                    Phillip D. Barber (Fed. ID No.12816)

        Andrew R. Hand (Fed. ID No. 12176)
        RICHARD A. HARPOOTLIAN P.A.
        1410 Laurel Street (29201)
        Post Office Box 1090
        Columbia, South Carolina 29202
        Phone (803) 252-4848
        Facsimile (803) 252-4810
        rah@harpootlianlaw.com
        pdb@harpootlianlaw.com
        arh@harpootlianlaw.com

        Matthew E. Yelverton (Fed. ID No. 7966)
        YELVERTON LAW FIRM, LLC
        60 Folly Road
        Charleston, South Carolina 29407
        (843) 574-8822
        Facsimile (843) 574-8824
        myelverton@ylitigators.com

        ATTORNEYS FOR PLAINTIFF
        VANIDA KHAUTISEN, AS PERSONAL
        REPRESENTATIVE OF THE ESTATE OF
        KHOUANEXAY BILL SIVILAY

August 3, 2023
Columbia, South Carolina.