# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Vanida Khautisen, as Personal Representative of the Estate of Khouanexay Bill Sivilay,<br><br>PLAINTIFF,<br><br>v.<br><br>BHG Holdings, LLC, and BHG XXXVIII, LLC,<br><br>DEFENDANTS. | C.A. No. 7:21-cv-03775-TMC<br><br><br>**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants, by and through undersigned counsel, hereby submit their Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment.

## ARGUMENT

Plaintiff's Response contains errors critical to the Court's analysis of Defendant's Motion for Summary Judgment.

1. **Under no circumstances do Plaintiff's claims sound in ordinary negligence. Plaintiff's own expert witness, Dr. Nathan Strahl, confirms this fact.**

2. **Plaintiff misrepresents Defendant's position regarding South Carolina law. Defendants do not contend that South Carolina law recognizes no third-party (*i.e.*, non-patient) claims against medical providers for their malpractice. Rather, Defendants maintain that the highly limited circumstances in which a non-patient claim alleging malpractice may reach a jury are not applicable to this case.**

## ARGUMENT IN REPLY

Defendants see no need to further address Plaintiff's outrageous comparisons of Defendants to the narcoterrorist, Pablo Escobar, or the borderline slanderous comments about

1

BHG Holdings, LLC's CEO, Jay Higham. Those matters are entirely irrelevant to this case and are merely being used to inflame the Court and our future jury. Plaintiffs are good people who suffered a tragic loss. Defendants simply contend that BHG XXXVIII, LLC ("BHG Spartanburg") met all applicable standards of medical care and that, as a matter of law, Defendants owed no duty of care to Mr. Sivilay.

To address the flaws in Plaintiff's Reply in Opposition:

**1. Plaintiff's expert, Dr. Nathan Strahl, agrees that Plaintiff's claims are grounded in medical malpractice.**

Plaintiff's expert psychiatrist, Dr. Strahl, testified in his deposition that opioid treatment programs (OTPs) are a more intensive and structured medical treatment than even his own medical practice. See Ex. 1, Dep. Nathan Strahl, MD, 7:2-11. When the partial agonist Suboxone (Buprenorphine) is not working for a patient suffering from opioid use disorder, Dr. Strahl will send them to an OTP for more intensive therapy with Methadone. Id. T.N. was a patient at BHG Spartanburg (an OTP) and receiving Methadone treatment.

To promote an "ordinary" negligence theory, Plaintiff repeatedly asks this Court to focus on the idea that BHG Spartanburg "sells" methadone to known drug abusers like T.N. at a substantial markup. This argument is entirely without merit. A medical provider cannot just "sell" methadone. Even Plaintiff's own expert, Dr. Strahl, agrees that "OTPs don't just [give] methadone. OTP[s] curtail substance abuse in their entirety, and if it's not working in one direction, then you up the ante with more intensive treatment or transfer to a detox center . . ." Ex. 1, Dep. Strahl, MD, 17:5-10. One cannot just walk into a Walgreens and buy Methadone over the counter. For a patient to receive Methadone, a Schedule II narcotic, the medication must be medically justified and prescribed by a medical doctor with a valid D.E.A. license granting authority to do so.

Methadone *must* be supervised in the highly regulated OTP setting, and take-home doses (i.e., unsupervised doses) may be awarded only once the patient is sufficiently stable. T.N. never reached a treatment "phase" beyond Sunday and Holiday take-home doses.

While Defendants disagree with his conclusions, Dr. Strahl accurately details the issues in this case. This case "boils down to a single fundamental attribute, and that single fundamental attribute really doesn't relate to methadone itself at all. It relates to the clinic's failure to provide adequate *treatment to a patient who is abusing opioids*." Ex. 1, Dep. Strahl, MD, 12:6-10 (emphasis added). Dr. Strahl believes this case "boils down to inadequacy of treatment of the whole patient." Id. at 13:22-25. He challenges "the failure of the clinic to address [T.N.'s] ongoing substance abuse." Id. at 16:22-24. "It's a lack of treatment." Id. at 17:4. "The clinic is supposed to provide accurate diagnoses for each of the substances that are currently abused and each of the substances that are historically abused. . . They are also supposed to provide the degree of impairment." Id. at 18:8-13. "The diagnoses lend themselves to the preparation and lending itself to the treatment modality that will come from those diagnoses." Id. at 22:8-10. "If the diagnoses are correctly proffered in the medical record, then the treatment that goes along with that is going to be modulated by those diagnoses so that adequate treatment can be provided." Id. at 23:13-17. "They're treating the whole person. . . prescribing methadone is not the only foundation of an OTP." Id. at 19:5-9.

This case is rooted in alleged medical malpractice. Fundamentally, "it is in the judgment of the medical director or the treatment center physician to discontinue methadone or buprenorphine treatment if it poses a danger to well-being or safety to [T.N.] or somebody else." Id. at 30:5-10. These decisions are based on scientific, technical, and specialized knowledge within

the scope of Rule 702, F.R.C.P.   Expert testimony is needed to "help the trier of fact understand the evidence or to determine a fact in issue."  See Rule 702(a), F.R.C.P.

More importantly, Plaintiff cannot use one strategy (*i.e.*, ordinary negligence) to get around this Motion for Summary Judgment and then try the case on violation of medical standards of care using Dr. Strahl, a psychiatrist, as their expert mouthpiece on the standards of care applicable to Defendants.  Nowhere does Dr. Strahl discuss acts or omissions rooted in ordinary negligence.  If he did, he would talk himself out of a gig here.

2. **This is a Motion for Summary Judgment, not a motion to dismiss under Rule 12(b)(6), F.R.C.P.   Plaintiff's claims now fail because there are no genuine issues of material fact applicable to the narrow <u>Hardee</u> and <u>Bishop</u> exceptions.**

Plaintiff argues that the Honorable Judge Wooten's Order obtained in *Santandreau* is conclusory to the issues in Defendants' present Motion for Summary Judgment.  3:16-3042-TLW (D.S.C. Sept. 8, 2016).   This argument is inherently flawed.  Judge Wooten's Order was a Rule 12(b)(6) analysis based on the pleadings before the Court at that time.  That case resolved *prior to* the Summary Judgment phase.

As this Court is well aware, "[t]he purpose of a 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve the contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999), citing <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). A court must not dismiss the complaint "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." <u>Edwards</u>, 178 F.3d at 244, citing <u>Harrison v. U.S. Postal Serv.</u>, 840 F.2d 1149, 1152 (4th Cir. 1988).  At the 12(b)(6) phase, <u>Hardee</u> or <u>Bishop</u> could very well supply that legal theory.

Judge Wooten reviewed the pleadings and found that "based on Plaintiff's allegations and the cases cited, [the] Plaintiff is not required to comply with section 15-79-125(A) because Plaintiff's claims arise in ordinary negligence." 3:16-3042-TLW (D.S.C. Sept. 8, 2016). Here, however, there is a critical issue omitted by Plaintiff. The Bishop and Hardee Courts acted *only* to identify two narrow circumstances in which a physician may be sued by a third party (non-patient) for the physician's alleged malpractice in treating a patient. In fact, the question contemplated by the Bishop Court was *whether, under the facts faced by the Court, the plaintiff should be able to initiate an action against a physician for malpractice*, thereby contravening the widely-accepted general rule that medical providers owe no duty of care to non-patient third parties. Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 502 S.E.2d 78, 91-92 (2017). In Hardee, the Court narrowly held that medical providers owe a duty to prevent harm to reasonably foreseeable third parties by warning patients of attendant risks and effects of treatment; and if the provider breaches that duty then the third party may bring a negligence action grounded in the physician's malpractice. Hardee v. Bio-Medical Applications of South Carolina, Inc., 370 S.C. 511, 636 S.E.2d 629, 631-632 (2006). Essentially, Judge Wooten's 12(b)(6) Order confirms the notion that there are limited circumstances where a non-patient may pursue a claim against a medical provider (i.e., Bishop and Hardee), and the Order held that Plaintiff's pleadings conformed to those cases. See Bishop, 502 S.E.2d at 87; Hardee, 636 S.E.2d 629 (2006).

However, Plaintiff misrepresents Defendant's position regarding South Carolina law and entirely misapplies Judge Wooten's Order to the present Motion for Summary Judgment. Plaintiff knows that Bishop and Hardee carve out only two narrow exceptions to the general rule that medical providers owe no duty of care to non-patients, which is why they focus on it in their Reply

5

in Opposition. The Bishop and Hardee Courts make this fact abundantly clear. Defendants *do not* contend that South Carolina law recognizes no third-party (*i.e.*, non-patient) claims against medical providers for alleged malpractice. Defendants believe this is precisely what Judge Wooten's order contemplated in discussing Bishop and Hardee. Rather, Defendants maintain that the highly limited circumstances in which a third party/non-patient's claim against a physician for alleged malpractice claim may reach a jury are not applicable to this case. Here, the Court's analysis must be as follows:

    Where "ordinary/general" negligence is alleged against a medical provider for acts or omissions occurring in a medical setting, the Court must first determine whether the claims in fact arise from medical malpractice. The S.C. Supreme Court in Dawkins reasoned that medical malpractice requires expert testimony to establish a duty and its breach, while ordinary negligence does not. Dawkins v. Union Hosp. Dist., 758 S.E.2d 501, 503–04 (S.C. 2014) (holding that a patient's fall while trying to use the restroom at a hospital, prior to receiving medical care, was rooted in general negligence and not medical malpractice). In the medical setting, a case will be considered medical malpractice unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct. David v. McLeod Regional Medical Center, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006); Carver v. Med. Soc'y of S.C., 286 S.C. 347, 350, 334 S.E.2d 125, 127 (Ct. App.1985). Dawkins is not intended to allow a plaintiff to plead one way (*i.e.*, ordinary negligence to presumably end-around damages caps, laws governing duties owed, etc.), then litigate their entire case on violations of medical standards of care.

Since Plaintiff's claims arise in medical malpractice (as discussed above) the next question is whether the plaintiff is a patient or third party/non-patient. If Plaintiff is a third party/non-patient, the rule of law is that only in very limited circumstances may a reasonably foreseeable third party maintain a suit against a medical provider for malpractice in treating a patient. See Hardee and Bishop, *supra*; Delaney v. United States, 260 F.Supp.3d 505, 509-512 (D.S.C. 2017).[1]

Then, the final step of the inquiry for this Motion for Summary Judgment is twofold: (1) Do Plaintiff's claims fit within the narrow exceptions set forth in Bishop and Hardee? If so, (2) is there a genuine issue of material fact surrounding those claims?

   a. **The Hardee Exception**

In attempt to fit within the Hardee exception, Plaintiff makes a "Hail Mary" attempt to allege BHG failed to warn T.N. of the risks of driving while mixing methadone and benzodiazepines. There is no question of fact surrounding T.N.'s knowledge of the risks involved with combining Methadone and Benzodiazepines. Plaintiff's experts have made no indication that BHG failed to warn T.N. of the dangers of driving a vehicle if he took Benzodiazepines or other illicit drugs. When asked about his opinions, Dr. Strahl made no mention that BHG failed to warn T.N. of the dangers of combining Methadone with Benzodiazepines. See Ex. 1, Dep. Strahl, MD 28:15-24. Contrarily, T.N. was provided with patient education forms, which he signed, regarding

---

[1] If a physician deviated from accepted standards of professional care in treating a patient, he breached a duty of care to the patient and **not a third party**. Sharpe v. S.C. Dep't of Mental Health, 292 S.C. 11, 354 S.E.2d 778 (Ct.App.1987), *cert. dismissed,* 294 S.C. 469, 366 S.E.2d 12 (1988) (duty of care owed to patient and not third parties) (emphasis added); see also, Tumblin v. Ball-Incon Glass Packaging Corp., 324 S.C. 359, 478 S.E.2d 81, 85 (Ct. App. 1996), citing Roberts v. Hunter, 310 S.C. 364, 426 S.E.2d 797 (1993) (The establishment of a doctor/patient relationship is a prerequisite to a claim of medical malpractice.").

the risks of combining Benzodiazepines and Methadone. See Ex. 2, T.N. Patient Education Forms. When T.N. was asked during his deposition about the Benzodiazepine Education Forms, he recalled seeing the forms and agreed he was aware of the potential risks or effects of taking Benzodiazepines in conjunction with Methadone. See Ex. 3, Dep. T.N., 16:22-17:5. T.N. also knew that combining the medications "can increase sedation, possibly slow your breathing more." Id. at 17:6-10.

For Plaintiff to now argue, without any supporting evidence, that T.N. was not aware of the potentially catastrophic risks of driving while combining the two drugs is without merit. There is no genuine issue regarding whether T.N. knew he should not be driving while taking the two medications in combination. That is no different than saying someone knew that alcohol would slow their processing speed, impair gross motor skills, and affect vision, yet they did not know they should not get behind the wheel. The argument is disingenuous and Plaintiff has no conflicting evidence to send this issue to a jury.

      b.  **The Bishop Exception**

Plaintiff argues, again without merit, that BHG Spartanburg had a "special relationship" with T.N. To reach this conclusion, Plaintiff misapplies Bishop and relies on Faile, a non-medical case where the Court analyzed the Department of Juvenile Justice's immunity under the Tort Claims Act. See Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 502 S.E.2d 78, 87 (2017); Faile v. Dep't of Juvenile Justice, 350 S.C. 315 (2002). In Bishop, a mentally afflicted mother was committed to a psychiatric hospital and under direct observation. The Court held that the Department of Mental "had a special relationship with the mother *because the Department had custody and control of mother*" and the Department knew of past threats of harm made by the

8

mother. Bishop, 502 S.E.2d at 87 (emphasis added). On the other hand, Faile has *never* been applied to a medical malpractice case. The Plaintiff in Faile alleged that the Department of Juvenile Justice failed to control a dangerous juvenile. Faile, 350 S.C. at 336. The Court reasoned that to impose a duty to control, there must be an established authority relationship and a substantial risk of serious harm. Id. at 339, citing Hubbard Felix, The South Carolina Law of Torts 57-72 (1990). In Faile, the "DJJ had custody of a known dangerous individual." 350 S.C. at 339.

Our case bears no similarity to Bishop or Faile. There is no evidence that T.N. was admitted for *inpatient* care at BHG Spartanburg. T.N. was not in BHG Spartanburg's custody. BHG Spartanburg had no ability to control what time or what days T.N. showed up for treatment. More importantly, BHG Spartanburg had no control over what intoxicating illicit substances T.N. elected to use in his own time— although the goal of treatment is to curb and, hopefully, eliminate illicit use. He is an adult— not a juvenile in custody of a governmental agency— for whom BHG Spartanburg was rendering private outpatient services on a "harm-reduction" model.[2] Our facts do not fit under the Bishop exception and, as a matter of law, the issue should not reach a jury.

In sum, Plaintiff's claims sound in medical negligence and there is no evidence to support the contention that this Court should impose a duty on Defendants under the narrow Hardee and Bishop exceptions.

3. **Plaintiff's "created risk of harm" theory fails because it is not recognized in the medical malpractice setting and not a recognized exception to the general South Carolina rule of law that medical providers owe no duty to third parties.**

No South Carolina or Fourth Circuit court has ever imposed a duty on a medical provider to protect a third party (non-patient) from harm on the basis that the provider "created risk of harm"

---

[2] See SAMHSA: Harm Reduction, https://www.samhsa.gov/find-help/harm-reduction

by providing inadequate medical care to a patient. Plaintiff has cited no case medical malpractice case holding such because one does not exist. Such an "end-around" to well-established law would create a landslide litigation effect on medical providers any time someone's medical care is a potential cause of a third-party injury. In many cases, it could deter substance abuse medical care. This is contrary to statewide and nationwide efforts to expand medical care for opioid dependent individuals.[3] [4] As a matter of law, Plaintiff's "created risk of harm" theory does not apply.

## CONCLUSION

Defendants respectfully seek an Order from this Court granting summary judgment on all causes of action.

Respectfully submitted,

HOLCOMBE BOMAR, P.A.

s/ Chance M. Farr
Chance M. Farr, Fed ID 12522
E. Brown Parkinson, Jr.
William B. Darwin, Jr.
PO Box 1897
Spartanburg, SC 29306
(864) 594-5300
cfarr@holcombebomar.com
ebparkinson@holcombebomar.com
kdarwin@holcombebomar.com
*Attorneys for Defendants*

This the 8th day of August 2023.
Spartanburg, South Carolina.

---

[3] "Due to the increasing number of opioid deaths in South Carolina, additional [OTPs] are needed for the services to be accessible within 30 minutes' travel time for the majority of state residents. The benefits of improved accessibility will outweigh the adverse effects of the duplication of this existing service." 2020 S.C. Health Plan, p. 55.
[4] See Exhibit 4, SAMHSA- "Removal of DATA Waiver (X-Waiver) Requirement"