IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Vanida Khautisen, as Personal Representative of the Estate of Bill Sivilay, <br><br>      Plaintiff, <br><br>vs. <br><br>BHG Holdings, LLC and BHG XXXVIII, LLC, <br><br>      Defendants. | Civil Action No. 7:21-cv-3775-TMC <br><br>**O R D E R** |

    This matter is before the court on Vanida Khautisen's ("Ms. Khautisen" or "the plaintiff") motion to compel (doc. 75) and BHG Holdings, LLC's ("BHG Holdings") and BHG XXXVIII, LLC's ("BHG Spartanburg") (collectively "the defendants" or "BHG") motion to quash and/or motion for a protective order (doc. 77). These motions were referred to the undersigned by order of the Honorable Timothy M. Cain, United States District Judge (docs. 101; 109).

## I. BACKGROUND AND FACTUAL ALLEGATIONS

    BHG Holdings is a parent company over numerous opioid treatment programs ("OTPs"), and its CEO is Jay Higham ("Mr. Higham") (docs. 75 at 2; 77-1 at 4). OTPs offer medication-assisted treatment by providing addicts with long-acting opioids, like methadone, that delay opioid withdrawal symptoms from short-acting opioids, like heroin, and allow time for withdrawal management and therapy (doc. 75 at 3). OTPs are also required to provide counseling services. 42 C.F.R. § 8.12(f)(5).

    Prior to working at BHG Holdings, Mr. Higham was the chief executive officer ("CEO") of IntegraMed America ("IntegraMed") (docs. 75 at 2; 77-1 at 4). Mr. Higham started at IntegraMed as a vice president of marketing in 1994, when IntegraMed had four locations and $8 million in revenue (docs. 75 at 2; 77-1 at 4). In late 2012, Mr. Higham was

CEO of IntegraMed and sold the company to a private equity firm for $169.5 million (docs. 75 at 2; 77-1 at 4). At that time, IntegraMed had 130 locations and was the largest network of fertility centers in the United States (docs. 75 at 2-3; 77-1 at 4). When Mr. Higham began working for BHG Holdings, BHG Holdings had thirty-one locations (docs. 75 at 3; 77-1 at 4). BHG Holdings now has 117 locations (docs. 75 at 2; 77-1 at 4). Mr. Higham was the CEO when BHG Holdings purchased BHG Spartanburg, an OTP in Spartanburg, South Carolina, in 2016 (docs. 75 at 2; 77-1 at 4).

The plaintiff alleges that South Carolina regulations set certain standards for OTPs, including that there must be at least one counselor for every fifty patients and that counselors must be qualified by certification or licensure, with a grace period for new hires to obtain certification (doc. 75 at 4) (citing S.C. Dep't of Health & Environ. Ctrl. Reg. 61-93). Additionally, there are requirements regarding the frequency of assessments and counseling (*id.*). The plaintiff also submits that South Carolina regulations require that OTPs conduct urine drug screenings of patients and that "[r]esults of substance use testing shall be addressed by the primary Counselor with the patient, in order to intervene in Controlled Substance use behavior" (*id.*). Moreover, the plaintiff contends that BHG has internal policies requiring efforts to counsel patients within ten days of a positive drug screening result (*id.*) (citing BHG Policy and Procedure 407).

On June 2, 2022, Trent Neal ("Mr. Neal")[1] enrolled at BHG Spartanburg following years of habitual heroin and illicit drug use (docs. 79 at 1; 75 at 5). BHG Spartanburg's Medical Director, James Harber ("Dr. Harber"), deemed Mr. Neal appropriate for admission (doc. 79 at 1). The defendants assert that upon Mr. Neal's admission to BHG Spartanburg, Mr. Neal received and signed multiple patient education forms, including information on methadone and a benzodiazepine education form that warned that "[c]ombining benzodiazepines with [MAT] can have serious health risks" (*id.*). As explained

---

[1] While the defendants refer to Mr. Neal as "T.N.," the plaintiff refers to him by his full name and has attached a declaration from Mr. Neal, in which Mr. Neal testifies that he does not want BHG to assert any privacy rights on his behalf (doc. 75-1, Neal decl. ¶¶ 3-6). Accordingly, the undersigned has also referred to Mr. Neal by his full name herein.

by the plaintiff, methadone and benzodiazepines, when taken together, synergize to depress central nervous system activity in a different way that intensifies the effects of both drugs (doc. 75 at 5). The plaintiff submits that this combination creates "a more intense high and more severe adverse effects, including shallow breathing, low blood pressure, respiratory arrest, cardiac arrest, and death" (*id.*). On June 3, 2020, Dr. Harber ordered Mr. Neal's methadone induction and schedule/requirements for dose increases (*id.*). As part of Mr. Neal's treatment plan, he was ordered concomitant counseling and would need to report to the OTP every day (except when the OTP was closed on Sundays or major holidays) to receive his daily methadone dose (*id.* at 1-2). On the days when BHG Spartanburg was closed, Mr. Neal was allowed a take-home dose (*id.* at 2).

The defendants assert that Mr. Neal was compliant with his randomized urine drug tests during his admission, for a total of approximately twenty-nine tests (doc. 79 at 2). Approximately nine tests were positive for benzodiazepines, and twenty-seven tests were positive for opiates (*id.*). The defendants contend that despite these positive tests, Mr. Neal's treatment was in line with the "harm reduction model" of treatment (*id.*) (citing SAMHSA: Harm Reduction, https://www.samhsa.gov/find-help/harm-reduction). The defendants assert that Mr. Neal attended and dosed over 90% of his admission days, which was above average during the COVID-19 pandemic (*id.*). The defendants further assert that Mr. Neal did well with his Sunday and Thanksgiving take-home doses (*id.*).

The defendants allege that Mr. Neal missed several telehealth counseling appointments but had one in-person counseling session on October 23, 2020, where his positive urine drug tests were reviewed (doc. 79 at 2). Mr. Neal was encouraged to increase his dose to reduce his self-medicating needs (*id.*). The defendants further allege that via telehealth on November 19, 2020, Mr. Neal was counseled regarding the risks of his illicit benzodiazepine use with methadone (*id.*). The parties dispute whether these interactions constitute one or two substantive counseling sessions (*id.*; doc. 75 at 5). Regardless, Mr. Neal attended either one or two counseling sessions during the totality of his treatment at BHG Spartanburg (*see* docs. 75 at 5; 79 at 2). The defendants submit that,

during this time, Dr. Harber and BHG Spartanburg's counselors and staff were directing Mr. Neal to attend counseling (doc. 79 at 2). The defendants further submit that BHG Spartanburg continued to dose Mr. Neal on the basis that it is explicitly outside the standard of care to withhold methadone from patients taking benzodiazepines (*id.* at 2-3; doc. 79-5 at 1-10).

The plaintiff argues that BHG Spartanburg had significant employee turnover because its employees were underpaid (doc. 75 at 7). The plaintiff describes testimony from Mr. Neal's first counselor, who stated that he was paid $16 an hour and described BHG Spartanburg as a "counselor factory" (*id.* at 7-8). Additionally, the plaintiff asserts that BHG charges $14 per day for methadone, which the plaintiff claims is over a 1600% markup (*id.* at 2, 8). The defendants, however, contend that this $14 per day covers the cost of all treatment services at BHG Spartanburg, including patient intake and medical record personnel, the physician prescribing and ordering the medication and treatment plan, all physician visits, the nursing staff who perform clinical assessments, the pharmacist and pharmacy technicians working inside BHG to administer the dose, the counseling services, and miscellaneous medical office administration (doc. 79 at 9). Further, the defendants contend that this price is in line with the entire South Carolina OTP market (including Spartanburg and Greenville Counties) (*id.*).

The plaintiff alleges that Mr. Neal consistently tested positive for benzodiazepines from early November 2020 through late December 2020, without any intervention by BHG (doc. 75 at 6). Mr. Neal tested positive for benzodiazepines on December 21 and December 23, 2020 (*id.*). Moreover, on December 24, 2020, Mr. Neal reported to BHG Spartanburg for his regular daily methadone dose and received one take-home dose for Christmas day, since BHG Spartanburg would be closed (doc. 79 at 3). On December 26, 2020, Mr. Neal was late to arrive at BHG Spartanburg and was not permitted to dose (*id.*). The defendants submit that the pharmacy window closed at 9:00 a.m., and Mr. Neal did not call BHG Spartanburg to inform staff members of his tardiness (*id.*). Mr. Neal attempted to sneak through a side door but was caught by the nursing supervisor,

Portia Pratt ("Ms. Pratt") (*id.*). The defendants state that Ms. Pratt testified in her deposition that she spoke with Mr. Neal and determined that he was not visibly impaired (*id.*). Mr. Neal was denied his daily dose and instructed to leave BHG Spartanburg for the day (*id.*). The defendants contend that the Board of Pharmacy mandates set hours of operation and, upon daily closure, BHG Spartanburg's pharmacy staff must perform routine closing and medication lock-up tasks (*id.*).

Mr. Neal left BHG Spartanburg and drove away (doc. 79 at 3). At approximately 9:32 a.m., Mr. Neal ran a red light and struck Khouanexay Bill Sivilay's ("Mr. Sivilay") vehicle (*id.*; doc. 75 at 6). Mr. Sivilay died because of the injuries sustained in the collision (doc. 79 at 3). The plaintiff asserts that responding officers found Mr. Neal so intoxicated that he needed their assistance to stand up (doc. 75 at 6-7). Mr. Neal was arrested, and his post-collision toxicology report showed recent marijuana use, recent benzodiazepine use (including "designer" benzodiazepines, which are "street" drugs and not approved for use by the FDA), and methadone use (doc. 79 at 3). Additionally, a small plastic bag with narcotic residue was found on his person after the collision (*id.*).

On November 18, 2021, Mr. Sivilay's wife, Ms. Khautisen, brought this wrongful death and survival action as personal representative of the estate of Mr. Sivilay against the defendants (doc. 1). The plaintiff filed a motion to compel on July 21, 2023 (doc. 75). The defendants filed a response on July 27, 2023 (doc. 79), and the plaintiff filed a reply on August 3, 2023 (doc. 80). The defendants then filed a motion to quash and/or motion for protective order regarding the deposition of Mr. Higham on July 26, 2023 (doc. 77). The plaintiff filed a response on August 9, 2023 (doc. 85), and the defendants filed a reply on August 11, 2023 (doc. 87). Judge Cain ordered the parties to attempt to reach a compromise regarding these motions and to file a joint status report about their efforts by September 8, 2023 (doc. 89). The parties filed a joint status report on September 8, 2023, indicating that they had been unable to resolve the issues in these motions (doc. 98). Judge Cain referred the motions to the undersigned on September 12, 2023, and October 17, 2023 (docs. 101; 109). Accordingly, these matters are now ripe for review.

## II. APPLICABLE LAW AND ANALYSIS

**A. Motion to Compel**

Federal Rule of Civil Procedure 26 provides, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment[.]' ") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "That said, discovery is not limitless and the court has the discretion to protect a party from oppression or undue burden or expense." *United States ex rel. Adams v. Remain at Home Senior Care, LLC*, C/A No. 1:17-cv-01493-JMC, 2022 WL 130942, at *2 (D.S.C. Jan. 14, 2022).

**1. Interrogatory Nos. 22 and 25 and Request to Produce No. 39**

In Interrogatory No. 22, the plaintiff asks for the revenue generated from drug-dispensing treatment programs at BHG Spartanburg in 2020 (doc. 75-2 at 7). Similarly, in Interrogatory No. 25, the plaintiff asks for the cost of counseling services provided at BHG Spartanburg in 2020 (*id.* at 9). Request for Produce No. 39 asks for production of all of BHG Spartanburg's monthly budgets in 2020, including prospective, target, or pro forma budgets and actual financial results against budget (doc. 75-11 at 7).

The defendants object, stating that this information is not relevant to whether the defendants were negligent in their treatment of Mr. Neal and whether that caused Mr. Sivilay's death (doc. 79 at 6-10). The defendants also argue that the plaintiff's requests are

6

premature because a defendant's financial information typically only becomes relevant if a plaintiff establishes a viable claim for punitive damages after surviving a motion for summary judgment and there is currently a pending motion for summary judgment in the instant case (*id.*).  The plaintiff, however, argues that these requests are not regarding punitive damages but the plaintiff's theory of the case - that BHG Spartanburg provided inadequate counseling to Mr. Neal (doc. 80 at 2-3).

The undersigned agrees with the plaintiff and finds that this information is relevant to the issues in the case, as the plaintiff is alleging that BHG attempted to keep its counseling costs low and failed to provide adequate counseling services to Mr. Neal (*see* doc. 75 at 13).  As set forth by the plaintiff, information responsive to these requests would also be relevant as to why Mr. Neal only received one or two substantive counseling sessions during his treatment at BHG Spartanburg (*id.*).  The plaintiff recognizes that the reason for Mr. Neal not having more counseling sessions could be a consequence of how BHG Spartanburg was operated in 2020 or something specific to Mr. Neal, like a lack of cooperation with treatment (*id.*).  Further, the undersigned notes that the plaintiff has limited the nature of these requests, as they are just related to finances at BHG Spartanburg for a single year.  Based on the foregoing, the undersigned grants the plaintiff's motion to compel regarding Interrogatory No. 22, Interrogatory No. 25, and Request to Produce No. 39.

    **2. Interrogatory No. 24**

In Interrogatory No. 24, the plaintiff asks for the number of counseling sessions provided at BHG Spartanburg in 2020 and the average length of those sessions, separately identifying in-person sessions and telehealth sessions (doc. 75-2 at 9).  The defendants object, claiming that this information is irrelevant to establishing whether the standards of medical care were met with regard to Mr. Neal (docs. 75-2 at 9; 79 at 10-11).  The defendants also assert that this information could be taken out of context because each patient has different counseling needs and overall circumstances, which is recognized by the Standards for Licensing Facilities for Chemically Dependent or Addicted Persons

(doc. 79 at 10-11) (citing D.H.E.C. Reg. 61-93 § 903(A)(3)).  However, the undersigned finds that this information is relevant to the issues in this case, including whether BHG Spartanburg provided inadequate counseling services and whether the reason that Mr. Neal had only one or two counseling sessions was because of Mr. Neal's actions or because of BHG Spartanburg's decisions.  Accordingly, the undersigned grants the plaintiff's motion to compel regarding Interrogatory No. 24.[2]

### 3. Requests for Production Nos. 35 and 36[3]

In Request for Production No. 35, the plaintiff seeks all employment or personnel files for any person employed at BHG Spartanburg at any time between June 1, 2020, to December 31, 2020, as a program director, counselor, or case manager (doc. 75-7 at 7).  The plaintiff explains that the purpose of this request is to know the number and qualifications of the persons employed at BHG Spartanburg (doc. 75 at 15).  The defendants state that they have already provided the personnel files for the two counselors who were assigned to provide services to Mr. Neal and that they continue to gather personnel files for Joseph Barr, the program director; Ruth Combs; Dr. Harber; and Wendy Thompson (doc. 79 at 5).  Moreover, the defendants have produced a 2020 BHG Spartanburg end of year report (*id.* at 6).[4]  However, the plaintiff contends that this annual report is a year-end snapshot and does not provide information about the counselors' qualifications or the employees' start and end dates, which would be located in the

---

[2] In the alternative, in Requests to Produce Nos. 40 and 41, the plaintiff requests that the defendants permit inspection of its Substance Abuse Methadone Maintenance System ("SAMMS") electronic medical record system at BHG Spartanburg, for the purpose of extracting information responsive to the plaintiff's Interrogatory No. 24, and produce a logical database schema for SAMMS at BHG Spartanburg (docs. 75-11 at 7; 75 at 14-15). Because the undersigned grants the plaintiff's motion to compel regarding Interrogatory No. 24, Requests to Produce Nos. 40 and 41 will not be addressed.

[3] While the plaintiff challenged the defendants' response to Requests to Produce Nos. 37 and 38 in the motion to compel, the plaintiff now asserts that she has received satisfactory documents in response to these requests (doc. 80 at 7).

[4] The plaintiff submits that this report reflects that there were ten counselors for 650 patients, which is beyond the South Carolina regulatory requirement (doc. 80 at 6).

8

personnel files (*id.*). However, the undersigned finds that discovery of entire non-party personnel files is likely to result in the production of wholly irrelevant personal information that is overbroad and not proportional to the needs of this case. As a result, the plaintiff's motion to compel regarding Request for Production No. 35 is denied.

In Request for Production No. 36, the plaintiff seeks all internal audit reports regarding BHG Spartanburg at any time in 2020 (doc. 75-7 at 7). The plaintiff submits that these reports reflect compliance with applicable regulations (doc. 80 at 6). The plaintiff contends that the defendants have produced the requested documents but only for the fourth quarter of 2020 (*id.* at 6-7). In their response to the plaintiff's motion to compel, the defendants state that "[t]o the extent that Plaintiff believes other documents should be produced," production would be "entirely disproportionate to the needs of this case and irrelevant" (doc. 79 at 6). However, the defendants have failed to explain their position (*see id.*). Because the plaintiff is alleging that the defendants failed to comply with applicable regulations and provide adequate counseling services, the undersigned finds that these documents for the other months in 2020 are relevant and proportional. Accordingly, the plaintiff's motion to compel regarding Request to Produce No. 36 is granted.

**B. Motion to Quash**

On July 21, 2023, the plaintiff's counsel served the defendants' counsel with a notice of deposition of Mr. Higham (doc. 77-8). The deposition was scheduled for July 27, 2023, in Dallas, Texas (*id.*). BHG Holdings's counsel asked the plaintiff's counsel to withdraw the notice, but the plaintiff's counsel declined (doc. 77-9). However, the plaintiff's counsel agreed to reschedule (*id.*). In their instant motion, the defendants argue that the plaintiff should not be permitted to take Mr. Higham's deposition under Rule 26 and the "apex doctrine" (doc. 77-1 at 5-11). The defendants recognize that although the Court of Appeals for the Fourth Circuit has not expressly adopted or rejected the apex doctrine, courts within the District of South Carolina have applied it when a party seeks to depose a high-ranking official for a company (*id.* at 5). Because both parties rely on the apex doctrine

9

in their briefs and courts within this district have utilized the doctrine under similar circumstances, the undersigned will apply that doctrine herein.

> Federal Rule of Civil Procedure 26 provides, in relevant part, as follows:
>
> (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]

Fed. R. Civ. P. 26(b)(2)(C). The court has discretion in fashioning relief, and Rule 26(c)(1) specifically authorizes courts to "prescrib[e] a discovery method other than the one selected by the party seeking discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." The apex doctrine is "a tailored application of the rules regulating discovery in specific instances involving high-level or 'apex' officials." *Estate of Valentine ex rel. Grate v. S.C.*, C/A No. 3:18-00895-JFA, 2020 WL 12783948, at *1 (D.S.C. Aug. 13, 2020). "The [a]pex doctrine recognizes that deposition notices directed at an official at the highest level or apex of corporate management ... creates a tremendous potential for abuse or harassment." *In re Lipitor (Atorvastatin Calcium) Mktg.*, C/A No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014) (citation and internal quotation marks omitted). "The purpose of the doctrine is to ensure that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs." *Id.* (citation and internal quotation marks omitted). "Most courts applying the [apex] doctrine have required that, before deposing a corporate defendant's high ranking officer, the plaintiff must show (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Id.* (citation and internal quotation marks omitted). "Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking

10

corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes good cause for such an order as an annoyance or undue burden within the meaning of Rule 26(c)(1)." *Estate of Valentine*, 2020 WL 12783948, at *2 (citation and internal quotation marks omitted).

The defendants argue that the information that the plaintiff is seeking from Mr. Higham is available from other sources (doc. 77-1 at 6-9). In response, the plaintiff indicates that the purpose of deposing Mr. Higham is to obtain information regarding clinic costs, including the cost of methadone, budgeted operations, regulatory compliance, and legal entity structure (doc. 85 at 3). The plaintiff's counsel asserts that he asked witnesses for this information, including subordinate executives who were designated as Rule 30(b)(6) witnesses, but no one could provide answers (*id.*). The plaintiff has set forth examples of this testimony in response to the defendants' motion (*see id.* at 3-9). The defendants argue in reply that the information that the plaintiff is seeking from Mr. Higham is irrelevant to the issues in this case (doc. 87 at 1).

As discussed above, the plaintiff's theory of the case is that BHG attempted to keep its costs low and, as a result, failed to provide adequate treatment to Mr. Neal. Thus, the undersigned finds that information regarding clinic costs, budgeted operations, and regulatory compliance is relevant here. Moreover, information regarding legal entity structure is relevant as to whether BHG Holdings may be liable. The defendants submit that information about their legal structure is not relevant at this juncture because there has not yet been a verdict/judgment and an inability to collect (doc. 87 at 2-3). However, as argued by the plaintiff, simply because the case has not yet proceeded to a judgment does not mean that information about BHG's legal structure is not relevant. Therefore, the undersigned finds that the plaintiff has shown that other less burdensome avenues for obtaining the information sought have been exhausted.

The undersigned also finds that Mr. Higham is likely to possess unique or special knowledge of the issues in this case. Mr. Higham has been the CEO of BHG Holdings for over ten years, and the company has grown significantly during his tenure. Mr.

Higham has likely acquired knowledge during this time on whether his clinics comply with applicable regulations, the structure of BHG Holdings and its subsidiaries, and the cost of methadone. Therefore, Mr. Higham must submit to a deposition. However, the undersigned cautions that "[d]eposition questioning should reflect the individualized search for facts specifically relevant to the individual plaintiff's claims and not a crusade for nefarious dealings at large." *See Estate of Valentine*, 2020 WL 12783948, at *3. Therefore, the defendants' motion for a protective order and/or to quash the notice of deposition of Mr. Higham is denied.[5]

### III. CONCLUSION

Wherefore, based upon the foregoing, the undersigned grants the plaintiff's motion to compel as to Interrogatory No. 22, Interrogatory No. 24, Interrogatory No. 25, Request for Production No. 36, and Request for Produce No. 39 and denies the plaintiff's motion to compel as to Request to Produce No. 35 (doc. 75). Further, the defendants' motion for a protective order and/or to quash the notice of deposition of Mr. Higham is denied (doc. 77).

IT IS SO ORDERED.

s/Kevin F. McDonald
United States Magistrate Judge

February 13, 2024
Greenville, South Carolina

---

[5] Even if the apex doctrine was not applied, the undersigned would still find that Mr. Higham must submit to a deposition under the factors set forth in Rule 26(b)(1).