IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Vanida Khautisen *as Personal Representative of the Estate of Khouanexay Bill Sivilay*, | Case No. 7:21-cv-03775-JDA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| BHG Holdings LLC, BHG XXXVIII LLC, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment and motions in limine. [Docs. 74; 93; 94; 116.]

On November 18, 2021, Plaintiff filed this wrongful death and survival action asserting claims related to the death of Khouanexay Bill Sivilay ("Decedent"). [Doc. 1.] On July 20, 2023, Defendants filed a motion for summary judgment. [Doc. 74.] Plaintiff filed a response in opposition to the summary judgment motion on August 3, 2023 [Doc. 81], and Defendants filed a reply on August 8, 2023 [Doc. 83]. Defendants filed motions in limine on August 29, 2023, and January 2, 2024. [Docs. 93; 94; 116.] Plaintiff has filed responses in opposition to those motions [Docs. 103; 104; 117], and Defendants have filed replies [Docs. 105; 106; 118].[1] Accordingly, all motions are ripe for review.[2]

---

[1] Plaintiff also filed a notice of supplemental authority regarding one of Defendants' motions in limine, to which Defendants filed a reply. [Docs. 127; 128.]

[2] This case was reassigned to the undersigned on February 13, 2024. [Doc. 121.]

**BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.[3]

Defendants operate methadone clinics[4] in the United States, one of which is BHG Spartanburg Treatment Center located in Spartanburg, South Carolina ("BHG").[5] [Docs. 1 ¶¶ 2–3; 15 ¶¶ 5–6.] On June 2, 2020, a patient named Trent Neal ("Neal")[6] began treatment at BHG, indicating that he wanted to get off heroin[7] and that he had also abused

---

[3] As will be explained, Defendants' motion for summary judgment argues only that they did not owe Decedent a duty of care. [Docs. 74; 74-1.] Accordingly, the Court limits its discussion of the facts of the case to those necessary to give a general background and to resolve the motion for summary judgment.

[4] Methadone is a long-acting full opioid agonist mediation and is used to treat Opioid Use Disorder. Methadone, Substance Abuse and Mental Health Services Administration, https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/methadone (last visited Aug. 9, 2024). Methadone "reduces opioid craving and withdrawal and blunts or blocks the effects of opioids." *Id.*

[5] According to Defendants, Defendant BHG Holdings, LLC is the parent company of Defendant BHG XXXVIII, LLC d/b/a BHG Spartanburg. [Doc. 74-1 at 1 n.1.]

[6] Defendants refer to Neal as "T.N." in their filings. [*See* Doc. 74-1.] However, Neal has executed a declaration waiving his rights to privacy and/or confidentiality regarding his relationship with BHG and its medical providers. [Doc. 75-1.] Thus, the Court refers to him by name.

[7] "Heroin is an opioid drug made from morphine, a natural substance taken from the seed pod of the various opium poppy plants grown in Southeast and Southwest Asia, Mexico, and Colombia." Heroin, National Institute on Drug Abuse, https://nida.nih.gov/research-topics/heroin (last visited Aug. 9, 2024).

THC[8] and morphine. [Doc. 81-13 at 2–3.] During intake, Neal received and signed multiple patient education forms, including information about methadone and a benzodiazepine[9] education form warning that "[c]ombining benzodiazepines with medication assisted treatment can have serious health risks." [Doc. 74-3.]

Neal received his first methadone dose of 30 milligrams on June 3, 2020. [Docs. 81-2 at 2; 81-13 at 2.] As part of his treatment plan, Neal was required to attend clinic daily, ask for needed dose increases, take urine drug screenings, and meet regularly with a counselor. [Doc. 81-13 at 2.] He continued with methadone doses at BHG through December 25, 2020, increasing his doses periodically by 5 milligrams until he reached a dose of 60 milligrams. [Doc. 81-2 at 1–18.] During the time Neal was treated at BHG, he was subjected to approximately 31 drug screenings. [*Id.* at 19–29.] Of those 31 drug screenings, he tested positive for morphine two times, THC seven times, opiates 27 times, amphetamines[10] 15 times, and benzodiazepines 8 times. [*Id.*]

The summary judgment record includes counseling notes from two sessions with Neal: an in-person session that lasted a little over one hour on October 23, 2020, and a

---

[8] "Tetrahydrocannabinol (THC) is one of the main active components found in marijuana. It acts as a mild sedative at low doses and a hallucinogen at high doses." Tetrahydrocannabinol, ScienceDirect, https://www.sciencedirect.com/topics/neuroscience/tetrahydrocannabinol (last visited Aug. 9, 2024).

[9] "Benzodiazepines are depressants that produce sedation and hypnosis, relieve anxiety and muscle spasms, and reduce seizures." Benzodiazepines, United States Drug Enforcement Administration, https://www.dea.gov/factsheets/benzodiazepines (last visited Aug. 9, 2024). Benzodiazepine "[a]buse is particularly high among heroin and cocaine users," and "opioid users often co-abuse benzodiazepines to enhance euphoria." *Id.*

[10] "Amphetamines are stimulants that speed up the body's system." Amphetamines, United States Drug Enforcement Administration, https://www.dea.gov/factsheets/amphetamines (last visited Aug. 9, 2024).

telehealth session that lasted 15 minutes on November 19, 2020.  [Doc. 74-5.]  In the October session, Neal and the counselor discussed his positive drug screenings and the possibility of requesting an increase in his methadone dose to minimize Neal's urge for self-medicating.  [*Id.* at 1.]  In the November session, they discussed his positive drug screenings for benzodiazepines, amphetamines, opiates, and THC, and the counselor explained "the harmful effects that those substances could have on [his] health."  [*Id.* at 3.]

On December 24, 2020, Neal reported to BHG for his regular daily methadone dose and additionally received one take-home methadone dose for Christmas day when BHG would be closed.  [Docs. 1 ¶ 26; 15 ¶ 18; 81-2 at 17.]  On December 26, 2020, Neal missed his daily methadone dose because he arrived at the clinic after it had closed for dosing.  [Docs. 81-2 at 17; 81-18 at 3–5 (7:16–9:4).[11]]

Around 9:22 a.m. on December 26, after he left the clinic, Neal was driving on Highway 176 in Spartanburg when he ran a red light and struck Decedent's vehicle, causing Decedent's death.  [Doc. 81-19.]  A post-collision toxicology report concerning Neal showed positive results for THC, methadone, and benzodiazepines.  [Doc. 81-20.]  Neal was arrested for felony driving under the influence with death, and the arresting officer found a small plastic bag with narcotic residue in it when he searched Neal.  [Doc. 81-19 at 8.]

---

[11] The deposition testimony reflects that this missed dose occurred on December 23, 2020.  [Doc. 81-18 at 3 (7:16–17).]  However, that date appears to be an error because Neal's dosing history shows that he received a methadone dose on December 23, 2020 [Doc. 81-2 at 17], and all parties indicate that this missed dose occurred on December 26, 2020 [Docs. 74-1 at 7; 81 at 11–12].

4

Plaintiff brought this wrongful death and survival action against Defendants, alleging negligence/negligence per se/gross negligence/willful, wanton, and reckless conduct based on duties of care Plaintiff alleges BHG owed to third parties, including Decedent, arising from:

    a.    The inherently dangerous dispensation of methadone to a known drug addict and continuing drug user, such as [Neal];

    b.    BHG's actual knowledge that [Neal] continued to use prescription and illicit drugs;

    c.    BHG's unique knowledge of the specific risk posed by [Neal] and his continued prescription and illicit drug use coupled with methadone use . . . ;

    d.    BHG's decision to dispense methadone not as a substitute for another drug, but in addition to the already dangerous cocktail of substances [Neal] was routinely impaired by;

    e.    An affirmative obligation to warn [Neal] of the dangers to himself and others posed by his methadone use in conjunction with other drugs;

    f.    An affirmative obligation to intervene to protect [Neal] and others after BHG's dispensation of methadone caused him to become intoxicated at an unreasonably dangerous level; and

    g.    State and federal law imposing strict limits on dispensation of methadone to drug addicts like [Neal].

[Doc. 1 ¶ 43.]

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

5

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute.  *Id*. at 322.  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

6

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits. Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256.

## DISCUSSION

**Defendants' Summary Judgment Motion**

Defendants argue they are entitled to summary judgment because BHG owed no duty of care to Decedent, a non-patient third party. [Doc. 74-1.] In response, Plaintiff contends that BHG owed Decedent a duty of care under several theories: a duty to prevent harm by warning Neal of the risks of driving after ingesting methadone with benzodiazepines; a duty to act with due care in dispensing methadone to Neal based on Defendants' special relationship with Neal; a duty to prevent harm because Defendants created the risk of harm; a duty to act with due care when dispensing a controlled substance based on federal and state laws and regulations and Defendants' own policies and procedures; and an ordinary duty of care outside of the medical provider context. [Doc. 81 at 18–35.]

7

To establish a cause of action for negligence in South Carolina,[12] a plaintiff "must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). "Without . . . a duty, there can be no actionable negligence." *Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 464 S.E.2d 330, 332 (S.C. 1995). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Invs., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005).

South Carolina law does not recognize a "general duty to control the conduct of another or to warn a third person or potential victim of danger." *Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 546 (S.C. 2002). Along the same lines, "[a]s a general rule, only a patient can maintain an action against a doctor for medical negligence." *Oblachinski v. Reynolds*, 706 S.E.2d 844, 846 (S.C. 2011). However, the Supreme Court of South Carolina has recognized that "[t]he physician-patient relationship is not a requisite in every legal action against a medical provider," and "[a] reasonably foreseeable third party, who is harmed by a physician's malpractice in treating a patient, may initiate an action against a physician for malpractice under limited circumstances."[13] *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 84 (S.C. 1998).

---

[12] "When sitting in diversity, a federal court must apply the law of the forum state as it is interpreted by the state's highest court." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022) (internal quotation marks omitted).

[13] Nonetheless, in *Bishop*, the court concluded that, on the facts of that case, the physician owed a duty only to the patient. *Bishop*, 502 S.E.2d at 84.

8

In *Hardee v. Bio-Medical Applications of South Carolina, Inc.*, 636 S.E.2d 629 (S.C. 2006), the Supreme Court concluded that the facts of that case—where the plaintiffs were injured when a patient of the defendant, a dialysis clinic, struck the plaintiffs' vehicle "minutes after [the defendant had] administered dialysis treatment" to the patient, *id.* at 630—gave rise to the duty recognized in *Bishop*. The *Hardee* court noted that "a medical provider has a duty to warn of the dangers associated with medical treatment." *Id.* at 631. Based on that duty to warn the patient, the court held that "a medical provider who provides treatment which it knows may have detrimental effects on a patient's capacities and abilities owes a duty to prevent harm to patients and to reasonably foreseeable third parties by warning the patient of the attendant risks and effects before administering the treatment."[14] *Id.* at 631–32. The Supreme Court of South Carolina has since refused "to extend the limited duty recognized in *Hardee*" beyond its narrow scope. *Oblachinski*, 706 S.E.2d at 846 (declining to extend the limited duty from *Hardee* to a non-patient who was

---

[14] In *Hardee*, the plaintiffs sued the dialysis clinic for negligence, alleging that the dialysis clinic did not warn the patient "of the ill effects that could result from his dialysis treatment," that the patient "was experiencing insulin shock or suffering from low blood sugar at the time he left" the dialysis clinic, and that the dialysis clinic "did not perform the normal post-treatment tests or monitoring prior to releasing" the patient. *Id.* The trial court granted summary judgment on all claims, determining that "a medical provider never owes a duty to a third party non-patient as a result of actions or omissions the provider takes in regard to a patient's treatment." *Id.* at 630–31. On appeal, the Supreme Court reversed the trial court and concluded that South Carolina law should recognize a duty by a medical provider to warn about treatment that it knows may have detrimental effects on a patient's capacities and abilities. *Id.* at 631–32. The *Hardee* court noted that the duty owed to third parties is identical to the duty owed to the patient and emphasized that its recognition of this duty was a "very narrow holding that carves out an exception to the general rule that medical providers do not owe a duty to third party non-patients." *Id.* at 632.

injured by a physician's negligent misdiagnosis, even though the resulting harm to the non-patient may have been reasonably foreseeable).

Under South Carolina law, therefore, the only duty a medical provider owes to third-party non-patients is a duty to warn the patient of the risks and effects of treatment. Here, as stated, the Complaint alleges that BHG owed a duty to Decedent based on several theories. [Doc. 1 ¶ 43.] However, the only alleged basis that is recognized by South Carolina law is BHG's duty "to warn [Neal] of the dangers to himself and others posed by his methadone use in conjunction with other drugs." [*Id.* ¶ 43.e.] Accordingly, based on the precedent set by *Hardee*, Defendants' motion for summary judgment is granted except as to Plaintiff's claims alleging negligence based on BHG's duty to warn Neal of the dangers to himself and others stemming from the use of methadone with other drugs.[15]

**Additional Briefing Regarding Claims Based on BHG's Duty to Warn**

Defendants did not address the remaining elements of negligence in their motion for summary judgment; however, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022); *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable

---

[15] Defendants also argue that Plaintiff's allegations are grounded in medical malpractice and not ordinary negligence. [Docs. 74-1 at 9–14; 83 at 2–4.] However, other than to note that medical malpractice claims require expert testimony to establish a duty and its breach [Doc. 74-1 at 10], Defendants do not seek any sort of relief based on their assertion that this is a medical malpractice case. Because *Hardee* squarely addresses whether a duty to warn exists in this case, the Court need not address whether this is a medical malpractice or ordinary negligence case at this time.

time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant [a summary judgment] motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). Here, having reviewed all of Defendants' pending motions, the responses in opposition, the replies, and the evidence of record, the Court concludes that Defendants may be entitled to summary judgment on Plaintiff's claims alleging negligence based on BHG's duty to warn Neal of the dangers to himself and others stemming from the use of methadone with other drugs. Accordingly, the Court places Plaintiff on notice and requires additional briefing on these claims as set forth below.

As noted, to establish a cause of action for negligence, a plaintiff "must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko*, 561 S.E.2d at 599. Here, the Court is not convinced Plaintiff can establish a genuine issue of material fact as to whether any alleged breach of Defendants' duty to warn proximately caused Decedent's death.

"Negligence is not actionable unless it is a proximate cause of the injury." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 662 (S.C. 2006). Proximate causation requires proof of both causation in fact, which "is proved by establishing the injury would not have occurred 'but for' the defendant's negligence," and legal causation, which "is proved by establishing foreseeability." *Id.* "Foreseeability is determined by looking to the natural and probable consequences of the complained of act, although it is

11

not necessary to prove that a particular event or injury was foreseeable." *Id.* "The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury." *Id.*

The Court notes the following hurdles for Plaintiff to overcome in establishing a genuine issue of material fact regarding proximate causation in this case.  First, the record shows that Neal was aware that combining methadone and benzodiazepines could cause sedation. *Cf. Singleton v. Sherer*, 659 S.E.2d 196, 206 (S.C. Ct. App. 2008) (concluding there was no genuine issue of material fact as to proximate causation in a premises liability action in part because the record contained no evidence that the plaintiff would not have been injured but for a property owner's failure to warn the plaintiff about a raccoon where the plaintiff knew the raccoon had bitten the property owner before he arrived and the plaintiff had been told not to try to catch the raccoon by himself); *Baughman v. General Motors Corp.*, 627 F. Supp. 871, 877 (D.S.C. 1985) ("Since plaintiff knew of the explosive danger associated with multi-piece rims, the failure to warn him of their propensity to separate was not the proximate cause of his accident, as a warning would not have altered plaintiff's conduct.").  At his deposition, when Neal was asked, "And do you believe that while at BHG you were aware of the potential risks or effects o[f] taking benzodiazepines in conjunction with methadone," Neal responded, "Yeah."  [*Id.* at 2 (17:2–5).]  When he was asked to explain those potential risks or effects, he testified "[t]hat it can increase the sedation, possibly slow your breathing more."[16]  [*Id.* at 2 (17:6–

---

[16] Indeed, Neal may have understood these effects because BHG warned him.  The record before the Court includes the patient education forms that Neal received and signed when he began treatment at BHG.  [Doc. 74-3.]  In one form, Neal was advised

10).] Second, even though Neal knew the risks, he still used benzodiazepines and other drugs while being treated with methadone. *Cf. Carnes v. Eli Lilly and Co.*, No. 0:13-591-CMC, 2013 WL 6622915, at *4 (D.S.C. Dec. 16, 2013) (applying the learned intermediary doctrine in a prescription drug failure to warn case and stating that to determine whether the plaintiff established proximate causation, the court must consider whether the plaintiff's physician would have changed his prescribing decision had there been a different warning on the medication); *Melton v. Medtronic, Inc.*, 698 S.E.2d 886, 894 (S.C. Ct. App. 2010) (concluding that the plaintiff failed to create a genuine issue of fact as to whether his physician's failure to apprise him of the risks involved in implanting a medical device constituted malpractice where there was no evidence that if he had been apprised

---

that "taking other medications (prescribed and over the counter medications), alcohol, herbs and illicit drugs can substantially increase the risk of negative side effects and possibly even death;" and that "[s]ome substances that are judged to be potentially harmful while taking methadone or buprenorphine are: Benzodiazeplnes, (Xanax, Librium, Tranzene, Valium, Pazipam, Ativan, Serax, Doral, and Klonopin) Opiates, Soma, Psychotroplc Medications, over-the-counter medications (OTCs), Herbs, Alcohol and any illicit substances such as cocaine and barbiturates." [*Id.* at 1.] In another form, Neal was informed that "benzodiazepines act as hypnotics in high doses, anxiolytics in moderate doses, and sedatives in low doses" and that "[c]ombining benzodiazepines with medication assisted treatment can have serious health risks: decreased respiration, heart complications, and even potential death may result." [*Id.* at 7.] In another form, Neal was advised that "[u]se of methadone with alcohol or other narcotics or sedative hypnotics may result in undesirable side effects." [*Id.* at 9.] In his deposition, Neal testified that he recalled seeing and signing these forms during intake. [Doc. 83-3 at 2 (14:1–16, 16:22–17:1).] However, given the parties' apparent disagreement as to how specific BHG's warning should have been [*see* Docs. 81 at 22 ("There is no evidence in the record that [Neal] was warned of the *specific risks of driving* while under the influence of methadone mixed with other substances . . . ." (emphasis added); 116-1 at 15 ("Any reasonable person. . . would understand that the warnings given to him about the dangers of combining Methadone with benzodiazepines (*i.e.*, increasing, among other things, the risk of sedation; hypnotic effects; severe injury; and even death) also means 'Do Not Drive.'")], the Court will focus on whether a genuine issue of material fact exists regarding proximate causation rather than breach of duty.

13

of the risks, plaintiff would have chosen not to have the device implanted). Third, Neal did not take methadone from BHG on the date of the accident because he arrived at the clinic after it had closed for dosing. [Docs. 81-2 at 17; 81-18 at 3–5 (7:16–9:4).] Finally, Plaintiff's expert testified that, even without methadone, given the levels of other illicit substances in Neal's toxicology report, he would have been too impaired to safely drive a vehicle at the time of the accident. [Doc. 116-9 at 2 (80:5–13).]

Although not in the specific context of arguing that Plaintiff cannot establish a genuine issue of material fact regarding proximate causation, Defendants have pointed out these same factual hurdles in multiple briefs.[17] In response, Plaintiff has failed to direct the Court to anything in the record to create a question of fact as to whether BHG's alleged failure to warn Neal of the dangers to himself and others stemming from the use of methadone with other drugs was a proximate cause of Decedent's death.[18]

---

[17] Defendants first noted Neal's awareness of the risks involved with combining methadone and benzodiazepines in their memorandum in support of the motion for summary judgment. [Doc. 74-1 at 17 ("[T]here is no question of fact surrounding [Neal]'s knowledge of the risks involved with combining Methadone and Benzodiazepines.").] They noted Neal's awareness again in their reply in support of the motion for summary judgment and in their memorandum in support of the third motion in limine. [Docs. 83 at 7; 116-1 at 15 ("When [Neal] was asked during his deposition about the Patient Education Forms, he recalled seeing the forms and agreed he was aware of the potential risks or effects of taking Benzodiazepines in conjunction with Methadone. [Neal] knew that combining the medications 'can increase sedation, possibly slow your breathing more.'" (internal citation omitted)).] In their memorandum in support of the third motion in limine, Defendants also noted that Neal did not take methadone on the date of the accident and that Plaintiff's expert stated that Neal would have been too impaired to safely drive a vehicle based on the other illicit substances he had taken even without methadone. [Doc. 116-1 at 14 ("[I]t is essential to recognize that [Neal] did *not* receive a Methadone dose on the day of the incident.") ("Even without Methadone, those illicit substances were sufficient to cause [Neal]'s intoxication on the morning of the incident with [Decedent].").]

[18] Defendants have also pointed out that Plaintiff lacks *evidence* to support her negligence claims based on BHG's failure to warn Neal. Although raised within their argument that the Court should exclude testimony or argument suggesting that BHG owed a duty to

14

Accordingly, by September 6, 2024, the parties shall meet, in person or by telephone, to confer about the remaining claims and issues raised by the Court in compliance with the undersigned's Rule 56 requirements.  *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.  Then, by September 27, 2024, Plaintiff shall file a brief demonstrating a genuine issue of material fact as to whether BHG's alleged failure to warn Neal of the dangers to himself and others stemming from the use of methadone with other drugs was a proximate cause of Decedent's death.  Plaintiff's brief shall be accompanied by a Joint Statement of Stipulated Material Facts and, if there are disputed material facts, a Plaintiff's Statement of Material Facts.  Defendants shall file a response brief by October 9, 2024, and their brief shall be accompanied by a Defendants' Statement of Material Facts if there are disputed material facts.  The briefing by the parties should be limited to the issues raised by the Court.[19]

---

specifically warn Neal not to drive, Defendants contended that "Plaintiff's experts provided no opinion that BHG's failure to specifically warn [Neal] of the dangers of driving a vehicle if he mixed Methadone with Benzodiazepines or other illicit drugs fell below any standard of care, or *could have been the cause* of [Decedent's] death." [*Id.* at 14 (emphasis added); *see also* Doc. 83 at 8 ("For Plaintiff to now argue, without any supporting evidence, that [Neal] was not aware of the potentially catastrophic risks of driving while combining the two drugs is without merit.").]  In her response, Plaintiff did not direct the Court to any such evidence and instead argued that "[w]hether BHG owed a duty of care is a legal issue, not an evidentiary issue, and therefore is not a proper subject for a motion in limine."  [Doc. 117 at 8.]

[19] The briefing procedures and statements of fact referenced here are a modified version of the undersigned's Rule 56 requirements because the Court has raised the issue of summary judgment on the remaining claims sua sponte and, therefore, there will be no motion for summary judgment.  The Court specifically directs the parties' attention to the requirement that they support their facts with specific, pinpoint references to evidence, as the briefing by the parties on Defendants' motion for summary judgment failed to direct the Court to evidence of record to support numerous factual assertions.  [*See* Docs. 74-1; 81.]

**Defendants' Motions In Limine**

In their motions in limine, Defendants seek to exclude at trial (a) the testimony of Plaintiff's expert, Nathan Strahl, M.D.; (b) any argument that BHG Holdings, LLC should be vicariously or jointly and severally liable for the independent acts and omissions of BHG XXXVIII, LLC; (c) any evidence used to pierce the corporate veil; (d) any argument that BHG XXXVIII, LLC should be considered an alter ego of BHG Holdings, LLC for purposes of liability; (e) any discovery outside of the discovery deadline related to the alter ego issues; (f) any jury instructions related to vicarious liability, joint and several liability, or alter ego issues; (g) any testimony or argument suggesting that Neal's failure to participate in more counseling services was a proximate cause of his decision to use illicit substances outside the presence of BHG, get behind the wheel, negligently operate his vehicle, and cause the accident with Decedent; (h) any testimony or argument suggesting that BHG's dispensation of methadone, or methadone itself, was the proximate cause of Neal's intoxication and conduct; and (i) any testimony or argument suggesting that Defendants owed a duty to Plaintiff to specifically warn Neal not to drive when combining methadone with benzodiazepines or other illicit substances.  [Docs. 93; 93-1; 94; 94-1; 116; 116-1.]  Given the Court's granting in part Defendants' motion for summary judgment, some of the issues raised by their motions in limine are now moot. Additionally, because the Court is requesting additional briefing regarding Defendants' entitlement to summary judgment on the remaining claims, the Court denies Defendants' motions in limine without prejudice and with leave to refile after the Court has decided the issue of Defendants' entitlement to summary judgment.  If the case survives summary

judgment on the remaining claims, the Court will issue a trial notice setting forth all relevant trial-related deadlines, including a deadline for the parties to file motions in limine.

## **CONCLUSION**

Wherefore, based upon the foregoing, Defendants' motions in limine [Docs. 93; 94; 116] are DENIED without prejudice and with leave to refile, and Defendants' motion for summary judgment [Doc. 74] is GRANTED IN PART and DENIED IN PART.  The motion is granted as to all claims except Plaintiff's claims alleging negligence based on BHG's duty to warn Neal of the dangers to himself and others stemming from the use of methadone with other drugs.  As to those claims, as set forth in detail above, the parties shall meet by September 6, 2024, to confer about the remaining claims and issues raised by the Court; Plaintiff shall file her brief by September 27, 2024; and Defendants shall file their response brief by October 9, 2024.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

August 23, 2024
Greenville, South Carolina